## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| Leo S., | ) |
|     Plaintiff, | ) |
| | ) Case No.: 21-cv-50282 |
| v. | ) |
| | ) Judge Iain D. Johnston |
| | ) |
| | ) Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## **REPORT AND RECOMMENDATION**

It is this Court's Report and Recommendation to the District Court that Plaintiff's motion for summary judgment [14], be granted and the Commissioner's motion for summary judgment [18], be denied, and that the decision of the ALJ be reversed and remanded. Any objection may be filed by January 9, 2023. Failure to object may constitute a waiver of objections on appeal. Fed. R. Civ. P. 72(b); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

## **BACKGROUND**

A.  Procedural History

Plaintiff protectively filed an application for disability and disability insurance benefits on January 30, 2018. After this claim was denied, Plaintiff protectively filed a second application for disability and disability insurance benefits, as well as an application for supplemental security income on December 8, 2018, alleging disability beginning on April 30, 2013. These claims were denied on July 19, 2019, and on reconsideration December 24, 2019. Plaintiff filed a request for hearing on January 13, 2020, and also requested at that time a reopening of the January 2018 application. The request for reopening of the January 2018 application was granted. R. 19. Administrative Law Judge ("ALJ") Lana Johnson held a telephonic hearing on October 2, 2020. *Id.* The ALJ heard testimony from Plaintiff as well as from Kathleen Doehla, an impartial vocational expert. *Id.* On November 3, 2020, the ALJ issued a decision finding Plaintiff was not disabled through March 31, 2018, based on his application for disability and disability insurance benefits protectively filed on December 8, 2018. However, the ALJ found Plaintiff disabled beginning on October 25, 2019, based on his application for supplemental security income protectively filed on December 8, 2018. *Id.* at 19-30. Plaintiff then filed a request for review of the decision with the Appeals Council, which denied review on April 8, 2021. R. 1. Plaintiff now seeks review of the ALJ's November 3, 2020, decision, which stands as the final decision of the

Commissioner, *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007), under 42 U.S.C. § 405(g). On June 10, 2022, Judge Johnston referred this matter to this Court for entry of a Report and Recommendation on Plaintiff's request for summary judgment [22].

B. Relevant Medical History[1]

Dating from 2013, Plaintiff's medical history includes diagnoses of autoimmune thyroid disease, anxiety, depression, fatigue, and sleep apnea. During that time, he reported to doctors a lack of energy, difficulty sleeping, "brain fog," and inability to drive. R. 329-402. Plaintiff was treated during that time with medication for his thyroid disease, on-and-off medications for his mental health conditions, and an Auto CPAP machine for his sleep apnea. *Id.* In 2017, Plaintiff was treated for degenerative changes to his knee. Starting in 2018, Plaintiff's medical records reveal ongoing participation in mental health treatment through Veteran's Affairs ("VA"). R. 459-577. Throughout his appointments with the VA, Plaintiff discussed his difficulties sleeping and his struggles with anxiety and depression. Plaintiff was prescribed a variety of medications for mood disorder, blood pressure, low thyroid, sleep, and sexual activity, including Fluoxetine, HCTZ, Hydroxyzine, Levothyroxine, Melatonin, Temazepam, Trazodone, and Sildenafil. R. 524-25. During home visits with the VA social worker, Plaintiff would display moods, sometimes with rapid speech and high anxiety. The social worker would assist Plaintiff with mail, bills, medication refills, and setting goals regarding his overall health, nutrition, and exercise. At more than one home visit, the social worker reported that Plaintiff's space was messy and disorganized, including clutter and dirty dishes. R. 534-37, 549-553, 562. Plaintiff was seen also by the VA psychiatric nurse practitioner ("NP") who reported in August 2018 that Plaintiff's anxiety score was considered clinically significant. R. 557. Plaintiff reported that his energy was low, he slept too much and always felt tired. R. 562.

The VA social worker home visits continued into 2019. During that time, Plaintiff repeated that he was having difficulty sleeping. He did report an ability to do his own grocery shopping and clean his apartment. The social worker also assisted Plaintiff in going through his mail and helping him decide what to keep and what to discard. Plaintiff reported spending a significant amount of time watching YouTube videos and reading Wikipedia. R. 480-493. In early 2019, Plaintiff reported to the NP that he was increasing his physical activity and attempting to make other small changes, such as sitting in his recliner (rather than his bed) to use his computer and making more efforts to keep the apartment clean. He reported using cannabidiol for anxiety. R. 496. Plaintiff reported having difficulty sleeping but was not having any suicidal thoughts. R. 500. The VA social worker noted that Plaintiff's strengths and abilities include resiliency, motivation to change, willingness to access community resources, a sense of humor, intelligence, and a compassion for others. R. 501-02.

In January 2020, the VA social worker reported that Plaintiff continued to report low motivation, low energy, and minimal activity. Nevertheless, Plaintiff did report a relatively high degree of interest in a variety of topics and had been spending time researching on the internet. R. 859-60. His insight and judgment were reported as good and his speech was fluent and

---

[1] This section is a summary of Plaintiff's medical history that is relevant to this appeal and does not represent Plaintiff's entire medical history.

spontaneous, but mildly rapid. R. 857. A telephonic follow-up was conducted in March 2020. At that time, Plaintiff's mood was reported as depressed, and his sleep schedule dysregulated. R. 851. In May 2020, Plaintiff reported his mood was the same. He reported spending his days lying in bed and using his computer or watching movies. R. 847. The VA followed-up with another telephone contact. At that time, Plaintiff provided more detail regarding his sleeping habits. He reported his sleep struggles worsened after he was diagnosed with thyroid disease. He described anxiety around going to sleep. R. 843. Plaintiff reported having difficulty running errands and performing other daily routines due to his sleep schedule. He repeated that he spends most of his time in bed watching television or engaging in online learning. He further reported chronic pain and severe anxiety. R. 844. Plaintiff told the VA psychologist that he was not receptive to strategies to regulate his sleep or to spend less time in bed during the day.

In July 2020, Plaintiff reported sleep progress after working with a VA psychologist. He noted that with more consistent sleep his mood had improved. Plaintiff was able to get out of the house to run errands and was, consequently, better able to sleep. However, Plaintiff did report increased knee pain. His anxiety had improved with better sleep. R. 833. In August 2020, Plaintiff noted an ability to fall asleep by initiating a breathing technique. He reported a slowing down of his breathing promoted better management of anxiety and panic symptoms. R. 827. In September 2020, the VA nurse practitioner filled out a Mental Impairment Questionnaire. There, the NP reported he had been Plaintiff's mental health provider since August 2018 and had seen Plaintiff for 30 minutes every one to two months. He reported treating Plaintiff with medication for depression and insomnia. He found Plaintiff mostly confined to bed due to depression and pain. R. 862. He further explained that Plaintiff presented with decreased impulse control which could lead to distraction of co-workers and impair his ability to stay on task. He stated that Plaintiff had difficulty maintaining a routine and managing his personal affairs. R. 864-65. The NP rated Plaintiff's limitation in concentrating, persisting, and maintaining pace as "marked." R. 865.

C. The ALJ's Decision

At the hearing, Plaintiff testified he suffers from post-traumatic stress disorder, anxiety, and depression and that he struggles to read, write, walk, stand, sleep, and follow things in sequential order. He also testified he had very little attention span. R. 45, 48. The ALJ also took testimony of a vocational expert. The VE stated she listened to Plaintiff's testimony and reviewed the evidence in Plaintiff's file regarding his work background. The ALJ posed hypotheticals to the VE to assist in determining Plaintiff's capacity to work. The VE was asked to assume someone of Plaintiff's age, education, and past job experience, able to perform work at all exertion levels, "except understand, remember and carry out simple, routine instructions, use judgment related to simple work-related decisions, and have occasional interaction with supervisors, coworkers and the general public." R. 72. The VE testified Plaintiff's past work would not be available under this hypothetical. The ALJ then posed the same hypothetical, but limited it to medium exertion level work, light exertion level work, and finally sedentary level exertion level work. Under each scenario, no past work could be performed; however, the VE testified to numerous jobs in the national economy that could be performed. R. 73-74. On examination by Plaintiff's counsel, the VE testified that based on her professional experience, competitive employment in the named jobs would be precluded if the employee was off-task 10 percent or more of the time. R. 75. Additionally, in response to questioning, the VE testified to impact of absenteeism, a need for

3

breaks, reminders of how to perform a job, and tolerance level for an individual who may distract other workers. R. 75-76.

In her ruling, the ALJ analyzed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaging in substantial gainful activity since April 30, 2013, when Plaintiff became disabled. R. 22. At step two, the ALJ found that Plaintiff had the following severe impairments since April 30, 2013: major depressive disorder; attention-deficit hyperactivity disorder ("ADHD"); post-traumatic stress disorder ("PTSD"); anxiety; degenerative joint disease of the bilateral knees; and obesity. *Id*. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination or impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, since April 30, 2013.

Before step four, the ALJ found that, since April 30, 2013, Plaintiff had a residual functional capacity ("RFC") to perform light work with the following exceptions: he could never climb ladders, ropes or scaffolds; he could occasionally stoop, kneel, crouch and crawl; understand, remember and carry out simple routine instructions; use judgment limited to simple work-related decisions; and tolerate occasional interaction with supervisors, coworkers, and the general public. R. 24. At step four, the ALJ found that Plaintiff could not perform any past relevant work since April 30, 2013. R. 27-28. Finally, at step five, the ALJ found that prior to October 25, 2019, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including small parts assembler, mail clerk, and cleaner-polisher. R. 29. The ALJ further found that beginning on October 25, 2019, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time through March 31, 2018, the date last insured. *Id.*

## STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019)). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at * 7 (N.D. Ill. Feb. 27, 2013).

The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (citations and quotations omitted). Additionally, "[a]n ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)).

## DISCUSSION

Plaintiff raises five arguments: 1) the ALJ's RFC assessment failed to explain how Plaintiff's limitations were accommodated by "simple" work; 2) the ALJ erred in evaluating Plaintiff's social restrictions; 3) the ALJ provided only a perfunctory analysis of the "C" criteria; 4) the ALJ erred in evaluating Plaintiff's subjective statements; and 5) the ALJ erred in evaluating the opinion of DNP Cain. The Court finds that the ALJ's RFC assessment failed to properly explain how Plaintiff's limitations in concentrations, persistence, and pace were accommodated by finding Plaintiff could accomplish "simple" work. Therefore, it is this Court's Report and Recommendation that this matter be remanded for further proceedings. The Court need not address Plaintiff's other arguments for remand.

First, in the listings analysis, the ALJ found that Plaintiff had a moderate limitation with regard to concentrating, persisting, or maintaining pace. Next, in support of her RFC assessment, the ALJ found that Plaintiff had the RFC to perform "light" work, limited to, among other things: "understand, remember and [carry out] simple routine instructions; use judgment limited to simple work[-]related decisions; and tolerate occasional interaction with supervisors, coworkers and the general public." R. 24. In support of this finding, the ALJ noted she considered the objective medical evidence, medical opinions, prior administrative medical findings, and Plaintiff's testimony at the hearing. The ruling stated that the State agency medical consultants' opinions were persuasive. Specifically, the ALJ pointed out that the State consultants opined that Plaintiff could understand and remember simple and detailed tasks and carry out simple and detailed instructions. The ruling goes on to state that Plaintiff's mental symptoms, pain and fatigue would occasionally interfere with his ability to concentrate, persist or complete a task; however, Plaintiff would be able to complete a task at an acceptable pace. Finding these conclusions to be supported by a detailed explanation, rationale, and analysis of Plaintiff's medical record, the ALJ considered these opinions persuasive. R. 27. In contrast, the ALJ found Plaintiff's VA nurse practitioner's opinions unsupported. The ALJ noted that the NP opined that Plaintiff had a moderate limitation in remembering or applying information and interacting with others. She also stated that while the NP opined that Plaintiff had marked limitations in concentration, persistence, and in maintaining pace, she found that the NP's progress notes and Plaintiff's mental status exams did not support these marked limitations. The ALJ found the State agency opinions more consistent with the "longitudinal record" and found the NP's opinions more extreme, unsupported, and unpersuasive.

Plaintiff argues the ALJ failed to address Plaintiff's moderate limitations and, when

5

summarizing the State agency opinions, did not explain how Plaintiff's limitations are accommodated by simple work, despite finding the State agency opinions persuasive.

The Seventh Circuit has held that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record…[including] deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citations and quotations omitted). Additionally, "[a]lthough it is not necessary that the ALJ use the precise terminology of 'concentration, persistence, or pace,' [the court] will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Id*. at 814. "The best way [the VE can exclude jobs the claimant would not be able to perform] is by including the specific limitations – like [concentration, persistence, and pace] – in the hypothetical." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In *Crump*, plaintiff appealed the district court's affirmance of the ALJ's denial of benefits. *Id*. at 568. Crump had been diagnosed with bipolar disorder and psychosis. However, the State agency consultants assessed her ability to carry out short and simple instructions as "not significantly limited," but scored her ability to maintain attention and concentration as "moderately limited." *Id*. at 569. The ALJ found that while Crump's impairments were severe, she was not disabled. *Id*. The ALJ found that Crump had "moderate difficulties maintaining concentration, persistence, or pace," but these problems were offset by the consultant's opinion that Crump remained "attentive, persistent, and focused." The ALJ attributed little weight to Crumps' treating psychiatrist, finding his opinions inconsistent with his treatment notes. *Id*. The ALJ denied Crump benefits, concluding she had the RFC to perform light work limited to "simple, routine, repetitive tasks with few workplace changes." *Id*. In reversing the ALJ's decision and remanding the matter, the Seventh Circuit noted that the ALJ should not, generally, rely on terms such as "simple, repetitive task," "because there is no basis to conclude that they account for problems of concentration, persistence, or pace. More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id*. at 570. *See also Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019) ("Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. We have also made clear that in most cases employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace, and thus, alone, are insufficient to present the claimant's limitations in this area.").

As Plaintiff points out in his brief, his limitations include, among other things, marked or serious depression, anxiety, rapid speech, mild loosening of association or thought process, difficulty sustaining attention, and controlling distractibility. "Even the Agency found a moderately limited ability to sustained attention and concentration." [14], p. 7. Plaintiff argues the ALJ limited Plaintiff to simple, repetitive work without addressing Plaintiff's ability to maintain concentration, persistence, or pace during the course of a workday. The Commissioner argues that the ALJ properly reviewed the evidence, determined that Plaintiff's mental impairments limited his work- related functioning, but that he retained the ability to understand, remember, and carry out simple tasks. In other words, "[b]ecause it was supported by substantial evidence, the [ALJ's]

6

residual functional capacity finding should be affirmed." [18], p. 12. In support of this position, the Commissioner argues Plaintiff has taken the position that the Seventh Circuit has explicitly stated that simple and routine work cannot accommodate deficiencies in concentration, persistence, and pace, and goes on to cite recent Seventh Circuit cases which affirm ALJ rulings that accommodate a claimant's moderate limitation in maintaining concentration, persistence, and pace by limiting the claimant to work that involves only simple and routine tasks or instructions. *Id*. After reviewing the cases cited by the Commissioner, the Court does not find them inconsistent with Plaintiff's position and agrees with Plaintiff that the cases the Commissioner relies on are not on-point. The Commissioner cites cases where an ALJ has accommodated a claimant's moderate limitations in maintaining concentration, persistence, and pace by limiting the claimant to work that involves only simple and routine tasks. However, those cases did not address the issue of an ALJ's RFC assessment failing to explain how a claimant's limitations were accommodated by "simple" work. For example, in *Peeters v. Saul*, 975 F.3d 639 (7th Cir. 2020), the Seventh Circuit's holding was that the ALJ gave proper partial weight to one doctor's opinion. In *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021), the court affirmed the district court's finding that, among other things, the ALJ reasonably relied on a State agency consultant's assessment of plaintiff in an RFC finding that accommodated plaintiff's moderate limitations in maintaining concentration, persistence, or pace with a restriction to simple tasks. These cases differ from the case at bar where Plaintiff argues that the ALJ failed, in the RFC assessment, to properly account for Plaintiff's limitations in concentration, persistence, and pace.

The Court agrees with Plaintiff that the ALJ's finding that Plaintiff could perform "simple and detailed tasks" did not take into account his limitations in concentration, persistence, and pace. *See Harry P. v. Kijakazi*, No. 19 CV 03107, 2022 WL 1541416, at *4 (N.D. Ill. May 16, 2022) (where ALJ restricted plaintiff to simple, routine tasks, such restrictions did "not adequately account for a claimant's limitations in concentration, persistence, or pace."). Additionally, here the hypotheticals the ALJ posed to the VE at the hearing did not include the specific limitations of concentration, persistence, and pace. *See Winsted*, 923 F.3d at 477 ("[T]he first hypothetical the ALJ posed to the VE did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated n the RFC and in the hypothetical question."). The Court should not be left to guess how a restriction to simple tasks would accommodate Plaintiff's limitations. *See Gregory J. v. Kijakazi*, No. 19 CV 2475, 2021 WL 5906065, at *4 (N.D. Ill. Dec. 14, 2021) ("Not only did the ALJ fail to accommodate Claimant's moderate limitations in her RFC assessment, but she also painted an incomplete picture of Claimant's limitations in her hypothetical to the VE.").

Because the Court recommends that this matter be remanded for reconsideration of this issue, the Court declines to address Plaintiff's other issues on appeal.

## CONCLUSION

For the above stated reasons, it is this Court's Report and Recommendation to the District Court that Plaintiff's motion for summary judgment [14], be granted and the Commissioner's motion for summary judgment [18], be denied, and that the decision of the ALJ be reversed and

remanded. Any objection may be filed by January 9, 2023. Failure to object may constitute a waiver of objections on appeal. Fed. R. Civ. P. 72(b); *Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Dated: 12/22/2022

_____
United States Magistrate Judge